DAVID R. EBERHART (S.B. #195474)
deberhart@omm.com
KAITLYN GOSEWEHR (S.B. #313458)
kgosewehr@omm.com
NATHANIEL LEGUM (S.B. #330517)
nlegum@omm.com
**O'MELVENY & MYERS LLP**
Two Embarcadero Center
28th Floor
San Francisco, California 94111-3823
Telephone: +1 415 984 8700
Facsimile: +1 415 984 8701

Attorneys for Plaintiffs
HYUNDAI MOTOR COMPANY and
HYUNDAI MOTOR AMERICA, INC.

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| HYUNDAI MOTOR COMPANY, a Korean corporation, and HYUNDAI MOTOR AMERICA, INC., a California corporation,<br><br>Plaintiffs,<br><br>v.<br><br>HYUNDAI TECHNOLOGY GROUP, INC., a California corporation, GENERAL PROCUREMENT, INC., a California corporation, and HYUNDAI TECHNOLOGY, INC., a Puerto Rican corporation,<br><br>Defendants. | Case No.<br><br>**COMPLAINT FOR**<br><br>1. **FEDERAL TRADEMARK DILUTION** (Lanham Act § 43(c)(2)(C); 15 U.S.C. § 1125(c)(2)(C))<br>2. **FALSE DESIGNATION OF ORIGIN** (Lanham Act § 43(a), 15 U.S.C. § 1125(a))<br>3. **COMMON LAW UNFAIR COMPETITION**<br>4. **CALIFORNIA UNFAIR COMPETITION** (Cal. Bus. & Prof. Code §§ 17200)<br>5. **CANCELLATION OF FEDERAL TRADEMARK REGISTRATION** (15 U.S.C. § 1119)<br>6. **DECLARATORY RELIEF** (28 U.S.C. § 2201(a))<br><br>**JURY TRIAL DEMAND** |

Plaintiffs Hyundai Motor Company ("HMC") and Hyundai Motor America, Inc. ("HMA") (collectively, "Hyundai Motor" or "Plaintiffs") bring this Complaint against Hyundai Technology Group, Inc. ("HTG"); General Procurement, Inc. ("GPI"); and Hyundai Technology, Inc. ("HTI") (collectively, "HT" or "Defendants").

## INTRODUCTION

1. Defendants offer shoddy products that tarnish the mark HYUNDAI that Plaintiffs have made both famous and associated with high quality in the minds of United States consumers. Defendants also falsely claim to be associated with Plaintiffs, falsely claim to be associated with broader elements of the worldwide Hyundai group, and have improperly copied Plaintiffs' distinctive stylization of the mark HYUNDAI. Defendants' usage is inconsistent with the established reputation for quality of the mark HYUNDAI and is also based on an invalid effort to transfer trademark rights. The Court should put an end to Defendants' use of the mark HYUNDAI.

2. Plaintiffs bring this lawsuit to stop Defendants' violations of Plaintiffs' intellectual property rights and unfair competition with Plaintiffs. In light of Defendants' continued violations of Plaintiffs' rights and the potential for significant reputational harm as a result of Defendants' conduct, injunctive relief is necessary to remedy the harm to Plaintiffs and prevent further infringement of Plaintiffs' rights.

## JURISDICTION AND VENUE

3. This Court has original jurisdiction over this action under the trademark laws of the United States 15 U.S.C. §§ 1051 *et seq*. and 28 U.S.C. § 1331. This Court has supplemental jurisdiction over Plaintiffs' related claims for relief under state laws pursuant to 28 U.S.C. § 1367(a).

4. Venue is proper under 28 U.S.C. § 1391 because this District is where a substantial part of the events or omission giving rise to the claim occurred, because Defendants market, distribute, offer for sale, and sell HYUNDAI-branded products to residents of California in this

District, both directly and through distributors.[1] In March 2023, Plaintiffs purchased and had delivered to an address in this District one of Defendants' products that is the subject of this action. Venue is also proper because Defendants are subject to personal jurisdiction in this District based on their ongoing and continuous advertising and selling products to consumers throughout this District.

5. Because this action arises from Plaintiffs' assertion of their intellectual property rights, Northern District of California Local Rule 3.2(c) excludes this action from the division-specific venue rule and subjects this action to assignment on a district-wide basis.

## PARTIES

6. Plaintiff HMC is a Korean company, located at 12 Heolleung-ro Seocho-gu Seoul 06797, Republic of Korea.

7. Plaintiff HMA is a corporation organized under the laws of the state of California with its principal place of business located at 10550 Talbert Avenue, Fountain Valley, CA, 92708.

8. On information and belief, Defendant HTG is a corporation organized under the laws of the state of California with its principal place of business located in 1964 W Corporate Way, Anaheim, CA, 92801.

9. On information and belief, Defendant GPI is a corporation organized under the laws of the state of California with its principal place of business located in 1964 W Corporate Way, Anaheim, CA, 92801.

10. On information and belief, Defendant HTI is a corporation organized under the laws of the Puerto Rico with its principal place of business located in Villa de Golf Este #89, Dorado, Puerto Rico, 92801.

---

[1] https://hyundaitechnology.com/pages/shipping-policy (Defendants "ship to addresses within the U.S.").

## FACTUAL BACKGROUND

### The Hyundai Brand

11. Plaintiffs' HYUNDAI brand is one of the best-recognized motor vehicle brands in the world. What later became known as the "Hyundai Group" began as an auto repair shop firm founded in 1946 by Chung Ju-yung in Seoul, South Korea. The Hyundai Group grew to comprise a multinational conglomerate with a major presence in automotive, shipbuilding, construction, industrial equipment, and other industries. In 1967, HMC was formed. HMA, a subsidiary of HMC, has operated and established the HYUNDAI brand in the United States for over thirty years on behalf of HMC. While the original Hyundai Group has since undergone restructuring, certain business entities including Hyundai Motor remain affiliated and operate under the same umbrella of leadership, known as the "pan-Hyundai Group."

12. Hyundai Motor has grown to become one of the largest automobile producers worldwide. In 2004, Hyundai Motor became the world's second automaker to export more than 10 million vehicles. Vehicles produced by Hyundai Motor are sold in over 150 countries. Consistent with its global reach, HYUNDAI was first nominated as one of the Best Global Brands by Interbrand in 2005, and for the last 8 years, Interbrand has recognized HYUNDAI as one of the top 40 "Best Global Brands."

13. HMC has established a significant United States presence through its U.S. subsidiary, HMA. Hyundai Motor entered the United States market in 1986 with its first automobile offering. In 2015, Hyundai Motor reached a milestone of 10 million cars sold in the United States. Today, over 700,000 HYUNDAI-branded vehicles are sold in the United States annually from over 835 dealerships nationwide. Approximately half of the cars Hyundai Motor sells in the United States are made at Hyundai Motor's Alabama manufacturing plant where Hyundai Motor employs thousands of American workers. Accordingly, HYUNDAI is widely recognized as a famous brand in the United States that is associated with Hyundai Motor.

14. Plaintiffs' vehicles have long been lauded for their high quality and reliability. For instance, since 2010, an American consumer loyalty consultancy has ranked Hyundai Motor #1 in customer loyalty for 13 years in a row. A prominent American consumer benchmarking company

ranked a 2016 Hyundai Motor midsize SUV as #1 in long term quality. A prominent American automobile magazine rated Hyundai Motor as having the #1 best electric SUV, #2 best subcompact SUV, #2 best subcompact sedan, and #3 best hybrid for 2023. Another established American automobile resource lauded a Hyundai Motor model as the top rated electric SUV for 2023. Yet another industry publication ranks the HYUNDAI brand as a whole in the top ten most reliable auto makers. Plaintiffs pride themselves on the performance, advanced technology, and durability of their vehicles. Plaintiffs' commitment to producing vehicles that are built to last is demonstrated by their industry-leading 10-year, 100,000-mile warranty.

15. Plaintiffs have used a stylized version of HYUNDAI in the United States since at least 1998. Consequently, that stylized version of the mark HYUNDAI has become strongly associated in the minds of consumers with Hyundai Motor and with high quality, engineering excellence, and reliability. That stylized mark appears as follows:

https://www.hyundaiusa.com/ (last visited 3/6/2023)

**<u>Plaintiffs' Intellectual Property Rights</u>**

16. For more than thirty years, Plaintiffs have offered automobiles for sale in the United States under the mark HYUNDAI. HMA's website has displayed the mark HYUNDAI in connection with advertising Plaintiffs' vehicles since at least 1998, as shown below:




Web Archive of hyundaiusa.com for 12/5/1998

17. The United States Patent and Trademark Office ("USPTO") has granted HMC numerous trademark registrations, including the registrations shown below.

| Mark | Registration Number | Registration Year |
|---|---|---|
| HYUNDAI | 1104727 | 1978 |
| **HYUNDAI** | 3991863 | 2011 |

18. Plaintiffs also own extensive common law trademark rights in HYUNDAI.

19. Plaintiffs' mark HYUNDAI has come to be associated with the highest quality, reliability, and engineering excellence throughout the United States and in California. As a result of Plaintiffs' remarkable longevity and consistency as respected automobile producers, Plaintiffs' registered and common law trademark rights (herein, the "HYUNDAI Mark") have acquired extraordinary goodwill and have achieved great fame both within and outside the United States.

20. The fame and popularity of the HYUNDAI Mark has generated strong customer demand for HYUNDAI-branded products and immediate brand recognition of the HYUNDAI Mark.

**Defendants' Business**

21. Defendants operate a business that makes, sells, and distributes personal computing and related products ("HT Products") on, at least, a website (https://hyundaitechnology.com/) (the "Website") and through third-party retailers. Defendants were founded by Imad Boukai, the current president of HTI and GPI. Defendants are not, and have never been, affiliated with or licensed by Plaintiffs.

22. On information and belief, HTI, HTG, and GPI operate collaboratively to manufacture, distribute, and sell HT Products on the Website and via third parties.

23. **HTG** was incorporated in California in 2017 and operates the Website in conjunction with the other Defendants. HTG's registered principal address, 1964 W. Corporate Way in Anaheim, CA, is the physical address provided on the Website. "Hyundai Technology Group, Inc." is named in certain legal notices on the Website.[2] Mr. Boukai has represented that GPI operated the hyundaitechnology.com website in cooperation with HTG.

24. **HTI** was incorporated in Puerto Rico in 2018. The Website identifies "Hyundai Technology, Inc." as its copyright owner. HTI purports to own a registration and an application for certain marks using the "Hyundai" name: Registration No. 5431013 ("the '013 Registration") and the mark claimed as Serial No. 90066098, for which a trademark application was filed July 22, 2020. The '013 Registration was registered on March 27, 2018 by Hyundai IBT Co., Ltd. and purportedly assigned to HTI, as further detailed below.

25. **GPI** was incorporated in California in 1996 and, as noted above, operates the Website in cooperation with HTI and HTG. The Website lists GPI as a distributor.[3] GPI also offers HT Products on its website, https://www.generalprocurement.com, where it advertises that "Hyundai Technology" is a "partner." According to Mr. Boukai, he registered the domain name for the Website on behalf of GPI for GPI's use.

26. On information and belief, Hyundai Display Co., Ltd.; Hyundai Technology of California, Inc.; Hyundai Technology Africa (Pty) Ltd.; Hyundai IT Co., Ltd.; Hyundai

[2] https://hyundaitechnology.com/pages/privacy-policy
[3] https://hyundaitechnology.com/pages/where-to-buy

Technology Holdings, Inc.; and GPI Acquisitions, Inc. are affiliates, agents, or pseudonyms for HTI, HTG, and/or GPI. Each of these entities has been licensed by or claims an affiliation with one or more of Defendants.

27. Defendants' personal computing products are of low quality and compete in the lowest end of the consumer computing sector, as demonstrated by the Website. Defendants offer to sell, for instance: (1) a "Hyundai HyBook 14.1 Celeron" laptop priced at $199.99; (2) a "Hyundai HYtab Plus" tablet priced at $69.99; and (3) a "Hyundai 24" FHD LED" monitor priced at $89.99. Defendants also sell the HT Products on Amazon.com, Walmart, and through other third parties at similarly low prices.

28. The Website demonstrates in multiple respects Defendants' willful intention to create an association in consumer's minds with Hyundai Motor and thereby to profit from Plaintiffs' reputation built over decades of producing quality automobiles.

29. First, Defendants prominently display on the Website the following trademark (the "Stylized Mark"), which closely resembles in font, color, and style the stylized version of the HYUNDAI Mark used by Plaintiffs:

HYUNDAI TECHNOLOGY | SMART CHOICE

hyundaitechnology.com (last visited 3/6/2023)

30. Second, the Website's "Our Company" page falsely represents that one or more Defendant entities were founded by Hyundai's founder and are affiliated with the pan-Hyundai Group. In large blue text, the top of the "Our Company" page states:

> HYUNDAI TECHNOLOGY | SMART CHOICE
>
> **Hyundai was founded over 70 years ago by Chung Ju-yung in 1947 in South Korea. Hyundai (pronounced jion-déi) means "modernity" in English.**

https://hyundaitechnology.com/pages/about-hyundai, last visited 3/7/2023

31. While it is true that Plaintiffs' predecessor, the Hyundai Group, was founded by Chung Ju-yung in 1946 in South Korea, the same is not true as to Defendants: Defendants were not founded by Chung Ju-yung, and Defendants are not affiliated with the pan-Hyundai Group. Defendants' claim of affiliation with the pan-Hyundai Group also represents a false claim of association with Plaintiffs, because Plaintiffs are affiliated with the pan-Hyundai Group.

32. The "Our Company" page further states that "the Hyundai brand is ranked 36th in global brand value (Interbrand 2020)" and is "recognized as a global leader in many industries from automotive to construction, shipbuilding, steel and technology":

> Today, the Hyundai brand is ranked 36th in global brand value (Interbrand 2020) and is recognized as a global leader in many industries from automotive to construction, shipbuilding, steel and technology.

https://hyundaitechnology.com/pages/about-hyundai, last visited 3/22/2023

33. These statements also communicate to consumers that Defendants are affiliated with the pan-Hyundai Group, which is a top-ranked global brand and is comprised of global leaders in the automotive, construction, shipbuilding, steel, and technology industries. But Defendants are *not* affiliated with either Plaintiffs or the pan-Hyundai Group; consequently, Defendants' claims of affiliation are false.

34. Third, in 2021, Defendants posted an article on the Website headlined: "Apple and Hyundai plan to partner to produce electric cars." But Hyundai Motor—not Defendants—discussed plans to partner with Apple on an electric vehicle.


3/18/2021 Apple & Hyundai - Hyundai Technology

HYUNDAI TECHNOLOGY

Apple & Hyundai Jan 19, 21

Apple and Hyundai plan to partner to produce electric cars

The production of these cars would begin, according to Korean media, in 2024, it would be in the United States at

https://hyundaitechnology.com/blogs/news/apple-hyundai 1/5

35. Accordingly, this is yet another example of Defendants seeking to create the false impression in consumers' minds that Defendants are affiliated with Hyundai Motor.

36. Defendants or their affiliates have sought to capitalize on the strength of the HYUNDAI brand through avenues other than the Website. For example, an HT affiliate, Hyundai Technology Holdings, Inc. ("HTH"), issued securities documents soliciting investment in products and services "to introduce the Hyundai brand of electronics items and appliances . . . into the market economy of the United States." The offering documents make the following statements:

- "The market expansion effort will be aided by the fact that the Hyundai brand is already known, worldwide, largely for its cars and trucks."
- "The brand and products are authentic and from the same group of companies that manufacture and sell Hyundai cars and trucks."

- "The products and services which are covered by this offering, therefore, will result in an expansion of the known high quality of Hyundai products and services, of its brand, and of its sales and distribution infrastructure."

37. Through at least these statements, HTH's offering documents further demonstrate Defendants' intention to create a false association in consumers' minds between Plaintiffs and Defendants and between Plaintiffs and the HT Products. Plaintiffs are in no way associated with Defendants or those products.

38. On information and belief, Defendants have in other instances held themselves out as affiliates of Plaintiffs, at all times without Plaintiffs' authorization, and with the intention of profiting from that affiliation. For example, the image immediately below shows an inquiry from a customer regarding an HT Product. That customer inquires, "don't yall make cars?" An individual with the screen name, "Manufacturer" replies, "Yes we do, but we've also made a lot of other things as well." On information and belief, the individual using the screen name "Manufacturer" was a representative of one or more of Defendants, because Amazon's policies state that a "Manufacturer" badge is "given to verified representatives of items listed on Amazon, such as the author, artist, or manufacturer of a product. This is a permanent badge."[4]

---

4 https://www.amazon.com/gp/help/customer/display.html/ref=cm_rn_bdg_help?ie=UTF8&nodeId=14279681, last visited 3/23/2023.




https://www.amazon.com/ask/questions/Tx2PWI8OU6GUZ6T/ref=ask_dp_lsw_al_hza?asin=B01N46A9YL, last visited 3/23/2023

39. Defendants advertise their products as having "superior performance," "reliable connectivity," and "the latest technology and support you can trust."[5] Defendants' HT Products do not live up to these promises.

40. In reality, Defendants' computing products are the antithesis of Plaintiffs' automobiles: they are poor quality, low durability, and are poorly engineered. Even reviews posted on the Website confirm that Defendants' computing products are "cheap quality," "basic," and "difficult to get started."[6]

41. Reviews of Defendants' products on third-party distributors' websites are consistently poor. Amazon reviewers report that an HT laptop is "absolute trash," that its "battery life is terrible," that it is "[not] a powerful performer," and it "feels cheap." Purchasers of the

[5] https://hyundaitechnology.com/
[6] https://hyundaitechnology.com/collections/notebooks/products/hybook-128gb

"Hyundai - 14.1" Thinnote-A" laptop from BestBuy complained that its "display viewability is awful in any light condition," "speakers crackle," and the "mouse pad doesn't feel good. Not even close to comparable budget laptops." Another self-identified "Unhappy customer" wrote that the laptop "did not work long enough to rate it." Others complained that the laptop was "really slow," feels "cheap," and had "misleading" specifications. HT's Wal-Mart reviews fare no better. One reviewer called the performance of a "Hyundai Technology 10.1" HYtab Plus 10WB2" tablet "horribly sluggish," the videos "of terrible quality," and noted that "apps take forever to install." Others called it "bad quality" and "one of the slowest tablets ever."

42. Reviewers on Google Reviews are similarly scathing:

- "8 inch hytab plus *LB1 is a pile of junk. Camera is garbage, Freezes more than anything. Total waste of money."
- "I just purchased on Jan 1 a laptop and after putting all my personal information last night, today the keys do not work, so I'm not able to sign on. I called tech support, no answer, goes to voice mail. I returned the laptop…ordered a new laptop from Lenovo/Amazon.
- "Fraud!! Fraud!! Fraud!!! Do not buy anything from them"

43. Even HT's Facebook page features similarly lackluster reviews of HT Products. One reviewer wrote: "Improve the quality of your products and inputs, they are disposable, in 8 months it started with keyboard problems and at 12 months it no longer turns on." Other reviewers wrote:

- "I only have a single app on this tablet and it's very slow! constantly freezing";
- "I'm actually very disappointed with the 10" tablet. . . the tablet has many problems";
- "They are not recommended, be VERY CAREFUL!!!!"; and
- "So I am stuck with a laptop that doesn't work and out of the money that I paid for it. This is my first and LAST time ever purchasing anything Hyundai related."

44. On information and belief, a significant number of consumers have a negative impression of the HT Products, and that impression reduces their view of the quality of the HYUNDAI brand.

**HT's Purported Assignment from an Unrelated Entity**

45. HT purports to have acquired certain rights to use the mark HYUNDAI from Hyundai Bioscience Co., Ltd. (formerly known as Hyundai IBT Co., Ltd.) ("Hyundai Bioscience"). Hyundai Bioscience is neither affiliated with nor controlled by Plaintiffs. And Hyundai Bioscience has had no affiliation with the pan-Hyundai Group since a corporate restructuring in 2001.

46. Hyundai Bioscience is a corporation based in South Korea that formerly manufactured televisions, monitors, and other displays. Hyundai Bioscience split off from the pan-Hyundai Group in 2001, ended that association, and became an independent company. On information and belief, Hyundai Bioscience began winding down its business relating to televisions, monitors, and other displays no later than 2012 and begin to focus its business on biotechnology. On information and belief, Hyundai Bioscience discontinued all business operations relating to televisions, monitors, and other displays no later than 2018. Hyundai Bioscience currently operates as a biotechnology company.

47. On November 5, 2018, Hyundai Bioscience and HTI entered a Trademark Assignment Agreement (the "2018 Attempted Assignment") purporting to assign "the entire rights relating to the 'HYUNDAI' brands owned by Assignor" to HTI, including the '013 Registration. On January 22, 2019, Hyundai Bioscience recorded with the USPTO an alleged assignment of all interest in the '013 Registration to HTI.

48. On information and belief, Hyundai Bioscience did not transfer all goodwill associated with its business to HTI.

49. On information and belief, Hyundai Bioscience did not transfer all or substantially all of its personnel, equipment, products, or other business assets to HTI. On information and belief, HTI did not in fact continue Hyundai Bioscience's business after the 2018 Attempted

Assignment. Instead, HTI started its own personal computing products business in Anaheim, California that was distinct from Hyundai Bioscience.

**<u>FIRST CAUSE OF ACTION – FEDERAL TRADEMARK DILUTION</u>**

**(Lanham Act § 43(c)(2)(C); 15 U.S.C. § 1125(c)(2)(C)) (Against All Defendants)**

50. Plaintiffs incorporate all of the above paragraphs as though fully set forth herein.

51. The HYUNDAI Mark is a valid, protectable mark. Hyundai Motor owns all right, title, and interest in and to the HYUNDAI Mark. Hyundai Motor has continuously promoted and used the mark HYUNDAI since 1986 to identify its products and services in the United States. As a result, the HYUNDAI Mark has become a famous and well-known symbol of Plaintiffs and their products and services among the general public in the United States. The relevant consuming market in the United States recognizes the HYUNDAI Mark as designating Hyundai Motor as the source of services and goods.

52. Defendants' use of the HYUNDAI Mark, including copies, variations, reproductions, simulations or colorable imitations thereof, in connection with Defendants' low-quality, cheap computer products and services tarnishes the valuable HYUNDAI Mark and Hyundai Motor's reputation for producing high-quality automobiles.

53. Hyundai Motor's HYUNDAI Mark is famous and distinctive. This fame is based on the HYUNDAI Mark's longstanding, strong association with motor vehicles in the United States. A significant majority of the U.S. population recognizes the HYUNDAI Mark, including a significant majority of the relevant consuming market, and associates it with Plaintiffs and their motor vehicles.

54. Defendants' use of "Hyundai" began after the HYUNDAI Mark became famous in the United States. The HYUNDAI Mark has been famous for over a decade, but on information and belief, the Defendants' use of "Hyundai" all began far more recently.

55. Defendants have made use of the HYUNDAI Mark in commerce, by including the trademark or colorable imitations thereof, in connection with their low-quality, cheap computer products, including on the Website.

56. Defendants' use of the HYUNDAI Mark is thus likely to cause or already has caused dilution by tarnishment because Hyundai Motor makes products that are of high quality and Defendants' products are poor quality; thus, Hyundai Motor's reputation is tarnished by Defendants' use of the HYUNDAI Mark.

57. The aforesaid acts of Defendants constitute dilution by tarnishment in violation of Section 43(c) of the Lanham Act, 15 U.S.C. § 1125(c).

58. Defendants' actions demonstrate an intentional, willful, and malicious intent to trade on the goodwill associated with the HYUNDAI Mark and to cause dilution of the HYUNDAI Mark to the great and irreparable injury of Hyundai Motor.

59. As a direct and proximate result of the foregoing acts of Defendants, Hyundai Motor has been damaged and has suffered and will continue to suffer immediate and irreparable injury.

60. Hyundai Motor has no adequate remedy at law and is therefore entitled to permanent injunctive relief.

61. Pursuant to 15 U.S.C. § 1117, Defendants' willful dilution of Hyundai Motor's trademark rights without excuse of justification also entitles Hyundai Motor to recover Defendants' profits, Hyundai Motor's ascertainable damages, and Hyundai Motor's costs of the action.

62. Defendants' conduct also renders this case exceptional, entitling Hyundai Motor to its reasonable attorney fees.

**SECOND CAUSE OF ACTION – FALSE DESIGNATION OF ORIGIN**

**(Lanham Act § 43(a), 15 U.S.C. § 1125(a)) (Against All Defendants)**

63. Plaintiffs incorporate all of the above paragraphs as though fully set forth herein.

64. The HYUNDAI Mark is a valid, protectable mark. Hyundai Motor owns all right, title, and interest in and to the HYUNDAI Mark. Hyundai Motor has used the HYUNDAI Mark since at least 1986 to identify its services in the United States. The relevant consuming market in the United States and in California recognizes the HYUNDAI Mark as designating Hyundai Motor as the source of goods and services.

65. Defendants use and used the designation "Hyundai" including using the Stylized Mark—which closely resembles in font, color, and style the stylized version of the HYUNDAI Mark used by Plaintiffs—to sell, offer for sale, distribute, and advertise their goods and services in a manner likely to cause confusion, deception, and mistake, including through postings on the Website. Defendants' usage of the Stylized Mark creates the false and misleading impression that Defendants are affiliated or associated with Plaintiffs, or that Defendants' goods are (1) offered, manufactured, or distributed by Plaintiffs; (2) are affiliated, connected, or associated with Plaintiffs; or (3) have the sponsorship, endorsement, or approval of Plaintiffs. Plaintiffs' and Defendants respective stylizations are shown below:

https://www.hyundaiusa.com/ (last visited 3/6/2023)

hyundaitechnology.com (last visited 3/6/2023)

66. Defendants further falsely create the impression that one or more of Defendants were founded by, sponsored by, or affiliated with the pan-Hyundai Group and, in turn, with Plaintiffs at least by representing on the Website:

a. That "Our Company" was founded 70 years ago by Chung Ju-yung in 1947 in South Korea;

b. That "Our Company" was ranked 36th in global brand value by Interbrand 2020;

c. That "Our Company" is "recognized as a global leader in many industries from automotive to construction, shipbuilding, steel and technology;

d. In a 2021 posting, that "Hyundai" planned to partner with Apple to produce electric cars.

67. Furthermore, an HT affiliate, HTH, made representations in securities offering documents that HT was affiliated with Hyundai Motor. On information and belief, Defendants encouraged or solicited HTH to make those representations. Defendants did so in order to create the false impression in potential investors' minds that Defendants and HT Products are produced, sponsored, supported, or otherwise associated with Hyundai Motor. Hyundai Motor is in no way associated with Defendants or those products.

68. On information and belief, Defendants have in other instances held themselves out as affiliates of Hyundai Motor without Hyundai Motor's authorization and with the intention of profiting from the brand recognition of Hyundai Motor.

69. Defendants' actions constitute unfair competition, including in the form of false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which are likely to cause confusion or mistake, or to materially deceive as to the affiliation, connection, or association of Defendants with Hyundai Motor or as to the origin, sponsorship, or approval of Defendants' products, services, or commercial activities, in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

70. Defendants' wrongful activities have caused Hyundai Motor irreparable injury. Hyundai Motor is informed and believes that unless such infringing conduct is enjoined by this Court, Defendants will continue those activities to the continued and irreparable injury of Hyundai Motor. This injury includes a reduction in the distinctiveness of Hyundai Motor's trademark, and injury to Hyundai Motor's reputation and goodwill that cannot be remedied through damages, as well as depriving Hyundai Motor of the exclusive use of its property in at least its stylization of HYUNDAI that is mimicked by the Stylized Mark. Hyundai Motor has no adequate remedy at law and is therefore entitled to permanent injunctive relief pursuant to 15 U.S.C. §§ 1114 and 1116(a).

71. Upon information and belief, Defendants' conduct as described herein demonstrates an intentional, willful, and malicious intent to trade on the goodwill associated with the HYUNDAI Mark to the substantial and irreparable injury of Hyundai Motor.

72. Pursuant to 15 U.S.C. §§ 1114 and 1117, Hyundai Motor is also entitled to recover Defendants' profits, Hyundai Motor's ascertainable damages, and Hyundai Motor's costs of the action. Defendants' acts render this an exceptional case that entitles Hyundai Motor to its reasonable attorney fees.

**THIRD CAUSE OF ACTION – COMMON LAW UNFAIR COMPETITION**

**(Against All Defendants)**

73. Plaintiffs incorporate all of the above paragraphs as though fully set forth herein.

74. Defendants' acts, as alleged above, constitute common law unfair competition.

75. Consumers in the United States and California strongly associate the HYUNDAI Mark with Plaintiffs and their high-quality motor vehicles. As described herein, Defendants sought to exploit that association through a deceptive scheme involving the Website and communications with third parties. Defendants use and used the designation "Hyundai" including using the Stylized Mark—which closely resembles in font, color, and style the stylized version of the HYUNDAI Mark used by Plaintiffs—to sell, offer for sale, distribute, and advertise Defendants' goods and services in a manner likely to cause confusion, deception, and mistake, including through postings on the Website.

76. Defendants further sought to exploit the association of the HYUNDAI Mark with Plaintiffs by creating the impression that one or more of Defendants were founded by, sponsored by, or affiliated with the pan-Hyundai Group and, in turn, with Plaintiffs at least by representing on the Website:

a. That "Our Company" was founded 70 years ago by Chung Ju-yung in 1947 in South Korea;

b. That "Our Company" was ranked 36th in global brand value by Interbrand 2020;

c. That "Our Company" is "recognized as a global leader in many industries from automotive to construction, shipbuilding, steel and technology;

d. In a 2021 posting, that "Hyundai" planned to partner with Apple to produce electric cars.

77. Furthermore, an HT affiliate, HTH, made representations in securities offering documents that HT was affiliated with Hyundai Motor. On information and belief, Defendants encouraged or solicited HTH to make those representations. Defendants did so in order to create the false impression in potential investors' minds that Defendants and HT Products are produced, sponsored, supported, or otherwise associated with Hyundai Motor. Hyundai Motor is in no way associated with Defendants or those products.

78. On information and belief, Defendants have in other instances held themselves out as affiliates of Hyundai Motor without Hyundai Motor's authorization and with the intention of profiting from a false association with Hyundai Motor.

79. Defendants' usage of the Stylized Mark and other acts enumerated above create the false and misleading impression that Defendants are affiliated or associated with Plaintiffs, or that Defendants' goods are (1) offered, manufactured, or distributed by Plaintiffs; (2) are affiliated, connected, or associated with Plaintiffs; or (3) have the sponsorship, endorsement, or approval of Plaintiffs. In particular, Defendants' use of the Stylized Mark evidences a "deceptive scheme" to exploit the secondary meaning associated with the HYUNDAI Mark. That deception is material to consumers' decisions to purchase HT Products.

80. Defendants' actions demonstrate an intentional, willful, and malicious intent to trade on the goodwill associated with the HYUNDAI Mark and deceive consumers to the great and irreparable injury of Hyundai Motor.

81. As a result of Defendants' actions, Hyundai Motor has been damaged in an amount not yet determined. Defendants' acts of unfair competition have caused Hyundai Motor irreparable injury. Hyundai Motor is informed and believes that unless such infringing conduct is enjoined by this Court, Defendants will continue those activities to the continued and irreparable injury of Hyundai Motor. This injury includes a reduction in the distinctiveness of the HYUNDAI Mark, and injury to Hyundai Motor's reputation and goodwill that cannot be remedied through damages, and Hyundai Motor has no adequate remedy at law. Hyundai Motor is entitled to a permanent injunction as well as an accounting of Defendants' profits, damages, and reasonable attorney's fees and costs.

**FOURTH CAUSE OF ACTION – CALIFORNIA UNFAIR COMPETITION**

**(Cal. Bus. & Prof. Code §§ 17200 et. Seq.) (Against All Defendants)**

82. Plaintiffs incorporate all of the above paragraphs as though fully set forth herein.

83. Defendants' acts, as alleged above, constitute unlawful, unfair, or deceptive business practices in violation of the California Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §§ 17200 et seq.

84. Defendants engaged in business practices by (1) advertising on the Website using the Stylized Mark, and (2) making representations on the Website and in other public-facing materials, such as the securities offering referenced above, that falsely create the impression that Defendants and HT Products are associated with or sponsored by Plaintiffs.

85. Defendants' foregoing business practices are unlawful, unfair, and deceptive under the UCL, because those actions are unlawful under the Lanham Act; are likely to confuse consumers as to the source, origin, or affiliation of Defendants' goods and services; misrepresent the nature, characteristics, and qualities of Defendants' goods and services; and/or are likely to deceive or have a tendency to deceive a substantial segment of consumers into believing that Defendants' goods and services have the nature, characteristics, and/or qualities of Hyundai Motor's goods and services. Defendants' acts also deprive Hyundai Motor of the exclusive use of its property in at least its stylization of HYUNDAI that is mimicked by the Stylized Mark.

86. Defendants' acts of unfair competition in the United States and the State of California have caused Hyundai Motor irreparable injury. Hyundai Motor is informed and believes that unless such infringing conduct is enjoined by this Court, Defendants will continue those activities to the continued and irreparable injury of Hyundai Motor. This injury includes a reduction in the value of the HYUNDAI Mark and Hyundai Motor's other valuable trademarks and injury to Hyundai Motor's reputation and goodwill that cannot be remedied through damages. Hyundai Motor has no adequate remedy at law. Hyundai Motor is therefore entitled to a permanent injunction.

87. As a direct and proximate result of Defendants' statutory unfair competition, Defendants have been unjustly enriched in an amount to be determined at trial.

**<u>FIFTH CAUSE OF ACTION - CANCELLATION OF FEDERAL TRADEMARK REGISTRATION</u>**

**(15 U.S.C. § 1119) (Against HTI)**

88. Plaintiffs incorporate all of the above paragraphs as though fully set forth herein.

89. On March 27, 2018, Hyundai Bioscience registered with the USPTO the ’013 Registration. On November 5, 2018, Hyundai Bioscience and HTI entered the 2018 Attempted Assignment purporting to assign “the entire rights relating to the ‘HYUNDAI’ brands owned by Assignor,” including the ’013 Registration, to HTI.

90. On January 22, 2019, Hyundai Bioscience recorded with the USPTO an alleged assignment of all interest in the ’013 Registration to HTI.

91. On information and belief, Hyundai Bioscience did not transfer all goodwill associated with its business to HTI.

92. On information and belief, Hyundai Bioscience did not transfer all or substantially all of its personnel, equipment, products, or other business assets to HTI. On information and belief, HTI did not in fact continue Hyundai Bioscience’s business after the 2018 Attempted Assignment.

93. Pursuant to 15 U.S.C. § 1064, “any person who believes that he is or will be damaged, including as a result of a likelihood of dilution by blurring or dilution by tarnishment under section 1125(c) of this title, by the registration of a mark” may file a “petition to cancel a registration of a mark” within “five years from the date of the registration of the mark.”

94. 15 U.S.C. § 1119 provides the power for courts to “order the cancellation of registrations” in “any action involving a registered mark.”

95. HTI’s business activities will damage, and in fact have damaged, Plaintiffs as a result of dilution by tarnishment, as described more fully above. Accordingly, the ’013 Registration should be cancelled.

96. The ’013 Registration should also be cancelled on the ground that the 2018 Attempted Assignment of the ’013 Registration was an invalid assignment in gross.

97. Accordingly, maintenance of the ’013 Registration is contrary to law, and that registration should be cancelled pursuant to the Court’s authority under 15 U.S.C. § 1119.

**SIXTH CAUSE OF ACTION – DECLARATION THAT ASSIGNMENT OF THE ’013 REGISTRATION WAS INVALID FOR LACK OF GOODWILL AND FOR CANCELLATION OF THE ’013 REGISTRATION**

**(28 U.S.C. § 2201(a)) (Against HTI)**

98. Plaintiffs incorporate all of the above paragraphs as though fully set forth herein.

99. On November 5, 2018, Hyundai Bioscience and HTI entered the 2018 Attempted Assignment, purporting to assign “the entire rights relating to the ‘HYUNDAI’ brands owned by Assignor” to HTI, including the ’013 Registration.

100. On information and belief, Hyundai Bioscience did not transfer all goodwill associated with its business to HTI.

101. On information and belief, Hyundai Bioscience did not transfer all or substantially all of its personnel, equipment, products, or other business assets to HTI. On information and belief, HTI did not in fact continue Hyundai Bioscience’s business after the 2018 Attempted Assignment. The 2018 Attempted Assignment was therefore an invalid assignment in gross.

102. Plaintiffs believe they are likely to be damaged by maintenance of the ’013 Registration for the reasons described herein. Plaintiffs are therefore entitled to a judicial declaration that the assignment of the ’013 Registration was invalid.

103. Moreover, because maintenance of the ’013 Registration is contrary to law, it should be cancelled pursuant to the Court’s authority under 15 U.S.C. § 1119.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs respectfully request the following relief:

(A) Judgment in Plaintiffs’ favor and against the Defendants on all causes of action alleged herein;

(B) That the Defendants, their agents, servants, employees, representatives, successors, affiliates, and assigns, and all persons, firms, or corporations in active concert or participating with any of them be permanently enjoined from:

(i) Manufacturing, importing, exporting, advertising, marketing, promoting, displaying, supplying, distributing, delivering, drop-shipping, offering for sale, selling, or transferring any goods or services which bear the HYUNDAI Mark in the United States including any use of the Stylized Mark;

(ii) Licensing or otherwise inducing any person to use the HYUNDAI Mark in the United States;

(iii) Committing any other act which represents or which has the effect of representing or suggesting that goods or services offered or licensed by Defendants are licensed by, authorized by, offered by, produced by, or in any other way associated with Plaintiffs or the pan-Hyundai Group; and

(iv) Using the "Hyundai" name in connection with their business;

(C) An order requiring Defendants and all of their officers, agents, servants, employees, affiliates, and attorneys, and all those in active concert or participation with any of them to:

(i) Destroy all remaining inventory of all goods located in the United States subject to the Permanent Injunction, if any, including without limitation all advertising, promotional, and marketing materials related to those goods, including without limitation store signs, catalogues, and any other items that bear, contain, or incorporate the HYUNDAI Mark; and

(ii) Remove from any websites under their control that are displayed to consumers in the United States, including without limitation hyundaitechnology.com and generalprocurement.com, any reference to the HYUNDAI Mark;

(D) An order declaring the 2018 Attempted Assignment to be an invalid assignment in gross;

(E) An order cancelling the '013 Registration;

(F) Damages in an amount to be further proven at trial;

(G) Restitution;

(H) Costs of suit incurred herein;

(I) Prejudgment interest;

(J) Attorneys' fees and costs; and

(K) Such other and further relief as the Court may deem to be just and proper.

**JURY DEMAND**

Plaintiffs demand a jury trial for all issues so triable.

Dated: March 24, 2023

O'MELVENY & MYERS LLP

By: */s/ David R. Eberhart*
David R. Eberhart

Attorneys for Plaintiffs
HYUNDAI MOTOR COMPANY and
HYUNDAI MOTOR AMERICA, INC.